**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ERICKA HARRIS,                    §
                                  §
            Plaintiff,            §
                                  §
v.                                §        CIVIL ACTION NO. H-09-2984
                                  §
FORT BEND ISD, *et al*.,          §
                                  §
            Defendants.           §

**MEMORANDUM AND OPINION**

Ericka Harris has sued her former employer, Fort Bend Independent School District, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.  In her amended complaint, she alleges that Fort Bend ISD retaliated against her for filing a complaint in which she asserted that a coworker had sexually harassed her.  After discovery, Fort Bend ISD moved for summary judgment.  (Docket Entry No. 28).  Harris responded, (Docket Entry No. 29), and Fort Bend ISD replied, (Docket Entry No. 35).  Harris filed her complaint *pro se* but was represented by counsel in responding to Fort Bend ISD's summary judgment motion.  Based on the pleadings; the motion, reply, and response; the summary judgment record; and the law, this court grants Fort Bend ISD's motion and enters final judgment by separate order.  The reasons are explained in detail below.

**I.      Facts**

Fort Bend ISD hired Ericka Harris as a bus driver in August 2008 and assigned her to work at its Hodges Bend Terminal.  Harris started working in October 2008  after she passed driving tests Fort Bend ISD required for applicants who did not hold a commercial drivers license.  (Docket Entry

No. 28-1, Ex. A, Harris Depo., 40–41).  Before Harris started driving bus routes by herself, she received an additional two weeks of training.

The additional training was provided by other experienced drivers on a one-on-one basis in early October 2008.  One bus driver who trained Harris was Hemmie Ward.  Harris alleges that while she was talking to Ward in a bus parked at Sugar Land Middle School, Ward told her that if she would have sex with another bus driver, Willie Robinson, Robinson would give her his Social Security checks.  Harris flatly refused Ward's proposition and told him that he was "stone-cold rude."  (Docket Entry No. 29, Ex. B, Harris Depo., 54–55).  Later that day, Robinson approached her while she was sitting at a table other bus drivers.  Harris alleges that Ward said, "No, no, no. That's my woman," when Robinson approached.  (*Id.*, 54).  Harris testified that she felt "humiliated" by this comment and dropped her head in embarrassment.  (*Id.* at 207–08).

Harris did not complain about Ward's comments until November 21, 2008.  She then reported the comments to Isaac Marlborough, the assistant director of Fort Bend ISD's transportation department.  Malbrough told Harris to write down her allegations and said that he would submit them to the human resources department.  (*Id.*, 60).  Malbrough forwarded Harris's allegations to human resources.  On December 12, 2007, Jo Ann Collier, the compliance coordinator for Fort Bend ISD's human resources department, sent Harris a letter acknowledging receipt of her complaint and notifying Harris that a meeting with her, Ward, and a neutral third party would be scheduled in January 2008.  (*Id.*, Ex. C).

On December 15, 2008, Harris's supervisor, Deidra Oliver, issued Harris a written warning for failing to timely report absence from work on December 1, 3, 5, and 15.  Fort Bend ISD requires bus drivers who are not reporting to work as scheduled to call their dispatcher as soon as possible,

2

"but in no event less than fifteen minutes before their scheduled clock-in time." (Docket Entry No. 28, Ex. A-5).  In her deposition, Harris testified that she had missed five days of work by mid-December 2008 and that she agreed with the warning.  (*Id.*, Ex. B, Harris Depo., 78–79).

On January 20, 2009, Harris, Ward, Malbrough, and James Hoss, an operations supervisor, met to discuss Harris's complaint.  Harris testified that at the meeting, Malbrough stated that sexual harassment would not be tolerated; that employees who believe they have been sexually harassed are encouraged to submit their complaints to a supervisor; and that Fort Bend ISD promptly investigates sexual harassment allegations and takes appropriate disciplinary action.  (*Id.*, 82–83).  Ward apologized to Harris, though Harris felt that his apology was insincere.  Harris testified that no further harassment occurred after the meeting and that it was a "satisfactory resolution."  (*Id.* at 220).

Aspects of the meeting were nonetheless disappointing to Harris.  She testified that she felt uncomfortable at the meeting because she was the only woman there.  Malbrough noticed this and apologized to Harris.  (*Id.*, 218–19).  She also testified that Hoss, the neutral third-party, appeared nonchalant about her allegations and she felt he thought she should "get it over with."  Harris testified further that during the meeting, she and Ward both "got loud."

Harris alleges that Fort Bend ISD first retaliated against her for filing the sexual harassment complaint shortly after this meeting.  She alleges that the retaliation took the form of assigning her a bus that had a diesel fuel leak for  "four to six weeks."  She testified that during that period, she sent repair-request forms to Fort Bend ISD's mechanics each day she smelled diesel fumes.  (Docket Entry No. 29, Ex. B, Harris Depo., 224, 228–29).  She testified that typically, if a bus driver reported

a mechanical issue, Fort Bend ISD would assign the bus driver a new bus.  (*Id.*, 232–33).  She also testified that other buses were available, but she was not given a different bus.

On January 7, 2009, Harris submitted an injury-report form to Fort Bend ISD.  On the form, Harris noted that she had "been smelling fuel for several weeks" and that the smell made her feel sick.  (*Id.*, Ex. E1).  Oliver helped her fill out the injury-report form.  Harris took paid leave from January 23, 2009 until mid-February 2009 because she felt ill.  When she returned, she was assigned the same bus.  She was not assigned a new bus for three weeks after returning to work.  (*Id.*, 84–86).

On April 6, 2009, Harris received another written warning.  The form stated that Harris had been on a bus with another driver without permission.  (Docket Entry No. 28, Ex. A-5).  Fort Bend ISD's Transportation Handbook states that "[e]mployees are not permitted to ride a route or go on field trips with other bus drivers without prior approval from a supervisor."  (Docket Entry No. 28, Ex. J).  Harris testified that she rode with another bus driver during an evacuation drill because she had never seen the drill.  Sylvia Lyles, another supervisor, caught Harris on the bus and wrote the warning.  Fort Bend ISD also initially withheld her pay for the time she rode on the bus without prior approval, but later reinstated the pay for that time.  (*Id.*).  Harris testified that she was aware of other drivers who rode along to see evacuation drills, but that she was not aware if they were disciplined.  (*Id.*, Ex. B, Harris Depo., 222).  She also testified that Lyles had told her it was "no problem," even though Lyles later reported her.  (*Id.*, 140).  Harris acknowledged, however, that the facts of the warning letter were accurate and that she had violated Fort Bend ISD policy.  (*Id.*, 79–80).

On April 3, 2009, Harris was again warned about failing to inform her dispatcher timely that she would not be coming to work.  The April 3 warning stated that Harris had failed to notify her

dispatcher that she would miss work on March 31, April 1, and April 2.  (*Id.*, Ex. A-5).   On April 14, 2009, after Harris again failed to inform her dispatcher that she would not be coming to work, Oliver suspended Harris for three days.  At her deposition, Harris acknowledged that everything in the "Decision Making Suspension Form," which referred to her December 15, 2008 and April 3, 2009 warnings, was correct.  (*Id.*, Ex. B, Harris Depo., 138–39).

On April 22, 2009, shortly after Harris's suspension, Oliver sent an email to Monique Da Sant-Crawford, Fort Bend ISD's "Paraprofessional / Auxiliary Services Administrator."  (*Id.*, Ex. D, Oliver Aff., ¶ 4).  In her email, Oliver asked whether, given the written warnings, Harris should receive a "reasonable assurance" of employment letter for the next year.  A "reasonable assurance letter" is sent by Fort Bend ISD to give employees reasonable assurance of employment for the following school year.  Da Sant-Crawford stated that Fort Bend ISD's standard practice is for its human resources department to review recommendations for not issuing a "reasonable assurance letter."  The letters are then forwarded to Fort Bend ISD's legal department.  (*Id.*, Ex. E, ¶ 4).  Da Sant-Crawford stated that she spent a few days reviewing Harris's employment documents, but she left work for a maternity leave beginning on May 8, 2009.  Before she left, Da Sant-Crawford told others in the human resources department to look further into whether Harris should be issued a reasonable assurance letter.  (*Id.*, ¶ 5).  The record shows that Fort Bend ISD's human resources department had not made any decision about Harris's employment for the following year when the 2008–2009 school year ended.  Harris did not receive a reasonable assurance letter for the following year.

On April 30, 2009, Harris sent a letter to Fort Bend ISD stating that she felt she was being retaliated against for her November 21, 2008 complaint about Ward's sexually harassing comments. (Docket Entry No. 29, Ex. D).  Harris's letter alleged that:

- Lyles, the supervisor who wrote the April 6, 2009 warning for riding with another bus driver during the evacuation drill,  told her to lie to the DPS after she missed a deadline for taking a road test, which she alleged she missed because Lyles had stopped her training.

- Hoss told her that her work attire was inappropriate.

- Hoss told her that her children could not get free bus service to their elementary school.

- Lyles treated her unfairly by disciplining her for riding with another driver to see the evacuation and unfairly accused her of "stealing time."

(*Id.*).

Malbrough responded to Harris's letter on May 5, 2009.  In his letter, Malbrough stated that after investigating the issues Harris raised, he found no evidence supporting her claim that Lyles had directed her to lie to DPS.  He also stated that after interviewing Hoss and Lyles about Harris's work attire, he concluded that it was inappropriate.  Malbrough told Harris in the letter that Fort Bend ISD did not provide free transportation service to the children of its bus drivers and told Harris the cost of the bus service.  Malbrough stated that Harris had been reprimanded because when she rode with another driver without prior permission, she had violated Fort Bend ISD policy, but she was still compensated for her time.  Finally, Malbrough concluded that he did not find any evidence of retaliation for filing the sexual harassment claim.  He emphasized that back in January 2009, Ward

was directed to refrain from making sexual comments to Harris and that she had not reported any incidents since that directive.  (*Id.*, Ex. J).[1]

Harris alleges that Fort Bend ISD retaliated against her the day after Malbrough sent his letter to her.  Harris received a letter from Janie Blanda, a Fort Bend ISD payroll administrator, stating that Harris's paycheck would not be deposited into her account because the bank had reported a change in her direct-deposit account information.  (*Id.*, Ex. L).  Harris alleges that she called her bank and was told that there had been no changes to her account.

In May 2009, Harris filed a complaint with the EEOC alleging sexual harassment and retaliation.  (Docket Entry No. 28, Ex. A, Harris Depo., 164).  The EEOC issued Harris a right-to-sue letter in July 2009.  (*Id.*, Ex. A-11).  Harris does not allege or argue that Fort Bend ISD retaliated against her for filing a complaint with the EEOC.

On August 12, Malbrough and Oliver submitted a "Termination Request Form" to Fort Bend ISD's human resources department, asking that Harris's employment be terminated.  The form cited her excessive absences, the written warnings she had received, and her failure to report a fuel leak. (Docket Entry No. 28, Ex. C-2).  When Malbrough and Oliver requested the termination, Harris had already begun preparing for the next school year.  On July 20, 2009, Fort Bend ISD sent Harris a letter telling her that Fort Bend ISD's "In-Service" for the upcoming school year would begin on August 11.  Harris attended the In-Service on August 11 and 12.  (*Id.*, Ex. M).  On August 19,

---

[1]   Malbrough's letter also discussed a May 4, 2009 written statement from Harris alleging that Hoss intentionally gave her the wrong employee identification number and that Hoss shoved her on April 21 or 22 in front of another employee's desk.  Malbrough spoke with Hoss, who denied giving Harris the wrong identification number, and Fort Bend ISD's payroll clerk, who informed him that Harris had difficulty clocking in and that she believe that Harris had mixed up her employee identification numbers.  As to the shoving allegations, the employee Harris identified as a witness did not remember seeing Hoss shove Harris. Malbrough also reviewed surveillance videos from April 21 and 22, which did not show Hoss shoving Harris. Harris does not argue that these incidents were retaliatory.  (Docket Entry No. 29, Ex. J).

Collier, who worked in human resources, requested that Carolyn Hanahan, Fort Bend ISD's General

Counsel approve Harris's job termination.  Hanahan approved the job termination.  (*Id.*, Ex. F).

On August 20, 2009, Malbrough and Oliver met with Harris and informed her that she was

being fired because of excessive absenteeism.  For Bend ISD's employee handbook states that

"[a]bsence in excess of the time allowed under Board policy for personal business and sick days is

considered to be excessive absenteeism and indicative of inability to perform the job assigned."

(Docket Entry No. 29, Ex. Q).  The handbook also has special rules for "unauthorized absences."

The handbook states in relevant part:

> Unauthorized absences (no-shows) are unacceptable and will subject
> the employee to disciplinary action.   Each occurrence will be
> documented by a written warning issued to the individual.   Three
> written warnings within a ninety (90) day period will be considered
> excessive absenteeism and the employee may be terminated

(Docket Entry No. 29, Ex. Q).  It also states that, for the purposes of counting absences, "[e]ach no-

show will be counted as two absences."  (*Id.*).  In her affidavit, Oliver stated that as of April 30,

2009, Harris had missed 24 days, excluding her workers' compensation absences.  Oliver also stated

that between November 20, 2008 and June 29, 2009, Harris missed a total of 51 days.  (*Id.*, Ex. N).

After meeting with Harris on August 30, 2009, Malbrough and Oliver sent her a

memorandum noting the meeting and telling her that she was being terminated from her job as bus

driver because her excessive absences violated the Transportation Employee Handbook.  (Docket

Entry No. 28, Exs C, C-3).  The memorandum stated:

> On August 20, 2009, I held a conference with you about the
> following concerns:
>
> •　　Informing you that our records indicate that you were absen[t]
> from work forty-seven (47) day[s] during the 08–09 school
> year.

8

- Our records also indicate that nineteen (19) of the days missed [were] related to a workman's compensation claim and were considered excused.
- I also shared the policy from our Transportation Handbook about absenteeism located on page 7 of the 08–09 handbook: "Absence in excess of the time allowed under Board policy for personal business and sick days is considered to be excessive absenteeism of inability to perform the job assigned. As such, it may result in loss of the opportunity for supplemental duties and/or the employee's termination at the discretion of the Transportation Director.
- You were informed that you did not receive a letter of assurance which secures employees job assignments for the upcoming year.

Your attendance affects the operation and success of our department. Staff expectations and responsibilities have been outlined in our district employee handbook, Transportation Handbook and discussed with you orally.

(*Id.*, Ex. C-3). When Harris was questioned in her deposition about this memorandum, she testified that she had "no reason to dispute that [47] was the number of days she missed." (*Id.*, Ex. B, 19). On September 9, 2009, Fort Bend ISD sent Harris an official termination letter. (*Id.*, Ex. A-10).

Harris alleges that Fort Bend ISD retaliated against her after her job termination by challenging her application for unemployment benefits with the Texas Workforce Commission. Fort Bend ISD stated that Harris was responsible for the illness she incurred from inhaling diesel fumes because she had poured diesel fuel onto the bus.

Harris filed this lawsuit on September 11, 2009. Fort Bend ISD has moved for summary judgment. (Docket Entry No. 28). In its motion, Fort Bend ISD argues that it is entitled to judgment on Harris's sexual harassment and hostile workplace claims because the record evidence shows only an isolated incident that was effectively addressed as soon as Harris complained. Fort Bend ISD argues that it is entitled to judgment on Harris's retaliation claim because there is no evidence

showing that the alleged adverse employment decisions, including her termination, were in retaliation for her complaint of sexual harassment.   Fort Bend ISD also argues that its nondiscriminatory reason for Harris's discharge — excessive absences — rebuts any inference of pretext, discrimination, or retaliation.   Harris responds that Ward's comments sufficiently support her sexual harassment and hostile workplace claims and emphasizes that Fort Bend ISD did not discipline Ward.  (Docket Entry No. 29).  As to her retaliation claim, Harris argues that (1) ignoring her report that her bus had diesel fuel leak; (2) writing her up for disciplinary violations; (3) withholding her paycheck; (4) terminating her employment; and (5) challenging her application for employment benefits after she was terminated were separate incidents of retaliation, each of which is actionable under Title VII.   She also argues that Fort Bend ISD's reason for her termination is pretextual because she did not have excessive absences and because other employees with similar absences were not fired.

## II.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material

fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.   Analysis

### A.   Hostile Work Environment

Harris alleges that she suffered a hostile work environment at Fort Bend ISD. The elements of a sexually hostile work environment claim are that the plaintiff was: (1) subject to unwelcome harassment; (2) based on her sex; that (3) affected a term, condition, or privilege of employment; and (4) that the employer knew or should have known of the harassment but failed to take prompt

remedial action. *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 393, 393 & n.2 (5th Cir. 2007)).

To be actionable, a work environment must be both subjectively and objectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993). Whether a work environment is objectively hostile depends on the totality of the circumstances; "workplace conduct is not measured in isolation." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Relevant circumstances may include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Only when conduct is "so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace" can a plaintiff get relief under Title VII. *Shepard v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998) (requiring "a showing of severe or pervasive conduct" for a hostile environment claim).

The actions Harris complains about do not, as a matter of law, create a hostile work environment. The only basis for her hostile work environment claims was the comments made by Ward. These were isolated comments made on one day. There is no evidence of any other sexual harassment during Harris's employment. Based on this evidence, a reasonable jury could not find that the harassment at Fort Bend ISD was so "severe and pervasive" that it destroyed Harris's ability to function in the workplace. *Shepard*, 168 F.3d at 874.

Harris also argues that Fort Bend ISD failed to take prompt remedial action after she complained of Ward's comments. "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004) (quoting *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir.1993)). "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.* (quoting *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)). "[A]n action is reasonably calculated to end sexual harassment when, after the harassment is reported and the remedial action is promptly taken, the harassment actually ends." *Newsome v. Collin Cnty. Cmty. Coll. Dis.*, 2005 WL 1683985, at *4 (E.D. Tex. July 19, 2005) (citing *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994), abrogated on other grounds by *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)); *see also Cristia v. Sys. Eng'g and Security, Inc.*, 2004 WL 1801326, at * (E.D. La. Aug. 12, 2004) (granting summary judgment based on evidence that the defendant instructed the harasser to stop harassing and he stopped).

The record evidence shows that Malbrough assisted Harris in preparing her sexual harassment complaint and that he referred the complaint to Fort Bend ISD's human resources department, which investigated. Three weeks after Fort Bend ISD's human resources department received Harris's sexual harassment complaint, Jo Ann Collier, the compliance coordinator, sent Harris a letter acknowledging that it had received her complaint and notifying Harris that a meeting with her, Ward, and a neutral third party would be scheduled. (Docket Entry No. 29, Ex. C). On January 20, 2009, Harris met with Malbrough, Ward, and Hoss to discuss Ward's comments. At the meeting, Ward apologized to Harris. During the meeting, Malbrough stated that Fort Bend ISD does

13

not tolerate harassment and encourages employees subject to harassment to submit complaints. Finally, the record shows that no further harassment occurred after the meeting.   Under the applicable precedent and based on the undisputed facts, Fort Bend ISD took sufficient remedial action.

Fort Bend ISD's motion for summary judgment on Harris's sexual harassment and hostile work environment claims is granted.

**B.    Retaliation**

Harris alleges that Fort Bend ISD retaliated against her for notifying her supervisors of Ward's offensive comments by: (1) ignoring her report that her bus had diesel fuel leak; (2) writing her up for disciplinary violations; (3) withholding her paycheck; (4) terminating her employment; and (5) challenging her application for employment benefits after she was terminated.   (Docket Entry No. 29, at 11).   Title VII makes it an unlawful employment practice for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a).   The elements of a *prima facie* showing of retaliation under Title VII are that the plaintiff: "(1) engaged in an activity protected by Title VII; (2) [she] was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."  *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).  For the purpose of a retaliation claim, an "adverse employment action" is defined as an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 126 S. Ct.

2405, 165 L.Ed.2d 345 (2006) (internal quotations omitted), abrogated on other grounds by *Burlington*, 548 U.S. 53, 126 S. Ct. 2405, 165 L.Ed.2d 345.

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate nonretaliatory reason for the employment action. *Davis*, 383 F.3d at 319. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* The standard of proof on the causation element of a Title VII claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct. *Septimus v. Univ. of Hou.*, 399 F.3d 601, 608 (5th Cir. 2005); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 329 (5th Cir. 2010) (holding that the Supreme Court's decision *Gross v. FBL Fin. Servs., Inc.*, ---- U.S. ----, 129 S. Ct. 2343 (2009) does not impact the Fifth Circuit's previous interpretations of Title VII).

The record shows that Harris reported the diesel fumes on the bus on repair-request forms she believed were sent to Fort Bend ISD's mechanics. (Docket Entry No. 29, Ex. B, 227–29). But she has not presented any evidence that Fort Bend ISD's mechanics were ever aware of her sexual harassment complaint. *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir.1994)). Harris has presented evidence that one of her supervisors, Deidrah Oliver, was aware that Harris was suffering from the diesel fumes because Oliver helped Harris prepare an injury report before she took workers' compensation leave. But there is no evidence that Oliver had any

communications with the mechanics or with those who assigned buses to the drivers.  There is no evidence that Oliver had any input as to which bus Harris would drive, or as to when Harris's bus would be fixed, before or after Harris returned from her workers' compensation leave.  Harris has not made a *prima facie* showing for her allegation that Fort Bend ISD retaliated against her for filing a sexual harassment complaint by refusing to provide her a new bus.

Harris also alleges that the warnings she received were retaliatory.  Harris does not dispute that she violated Fort Bend ISD's policy by riding with another bus driver without prior approval or by failing to timely report absences from work.  She conceded that she committed the work-rule violations stated in the warnings.  (Docket Entry No. 29, Ex. A, 78–80).  The law is clear that written warnings are not adverse employment actions.  *See Soublet v. La. Tax Comm'n*, 2011 WL 446268, at * (E.D. La. Feb. 3, 2011) (finding that finds "that plaintiff's complaints of increased or altered supervision, criticism and documentation, even when considered together, would not dissuade a reasonable worker from making or supporting a charge of discrimination").  Harris argues that Fort Bend ISD was attempting to create a paper trail so that it could terminate her, but she produced no evidence supporting this allegation.  *See Bui v. Horseshoe Entertm't*, No. 07-1712, 2009 WL 587084, at *12 (W.D. La. March 5, 2009) (plaintiff's assertions that her supervisors "created a paper trail of written warnings to get rid of her" and repeatedly subjected her to negative treatment at work were not adverse employment actions in the retaliation context); *Muse v. Jazz Casino Co.*, No. 09-0066, 2010 WL 2545278, at *3 (E.D. La. June 16, 2010) (supervisor's close scrutiny of employee's work was not a materially adverse employment action for retaliation claim).  The warnings Harris received were not adverse employment decisions and do not support a retaliation claim.

Assuming that Harris has stated a *prima facie* case that her suspension from work was retaliatory, she has not produced or identified any evidence that Fort Bend ISD's reason for suspension — failure to timely report her absences to the dispatcher — is pretextual.  To the contrary, Harris acknowledged that Fort Bend ISD requires its bus drivers to report absences at least fifteen minutes before their scheduled clock-in time; that she failed to do so on each date identified in her two warnings and in her suspension notice; and that the warnings and suspension notice were accurate.  (Docket Entry No. 29, Ex. B, 78–82).  The undisputed evidence shows that the suspension was not retaliatory, as a matter of law.

Harris also alleges that Fort Bend ISD retaliated against her by delaying her paycheck shortly after she sent a letter alleging retaliation.  The record shows that Harris received a letter from Janie Blanda, a Fort Bend ISD payroll administrator, stating that Harris's paycheck would not be deposited into her account because the bank reported a change in her direct-deposit account information.  (*Id.*, Ex. L).  Harris has not produced or identified summary judgment evidence that Blanda was aware of her sexual harassment complaint.  There is no basis to infer that Blanda had a retaliatory motive in delaying Harris's paycheck.  *See Chaney*, 179 F.3d at 168 ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

Harris's claim that the paycheck delay was retaliatory also fails because such minor inconveniences are not adverse employment decisions.  *See Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. May 4, 2004) ("A delay in promotion is not an adverse employment action where any increase in pay, benefits, and seniority are awarded retroactively."); *Sherrod v. Prairie View A & M Univ.*, 2011 WL 843936, at * (S.D. Tex. Mar. 8, 2011) (finding that the plaintiff's

"delay-in-pay discrimination claims" fail because there was no evidence that the plaintiff did not receive her paycheck or that the payment was for less than the amount expected).  Harris's claim that Fort Bend ISD retaliated against her by delaying her paycheck fails as a matter of law.

Harris alleges that Fort Bend ISD retaliated against her by terminating her employment. Harris has not made a *prima facie* showing of a causal link between reporting Ward's sexual harassment in November 2008 and the job termination nearly eleven months later, in August 2009. "To determine the existence of a causal link, [the Fifth Circuit looks] to three factors: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination."  *Dehart*, 214 F. App'x at 442.

As to the first factor, Harris had no disciplinary record before she informed Fort Bend ISD of Ward's harassment on November 21, 2008, but she had only started working at Fort Bend ISD in October 2008.  The record evidence shows that Harris had a number of justified reprimands before the termination decision.

The record evidence also shows that Fort Bend ISD followed its policies and procedures in terminating Harris's employment.  Harris argues that Fort Bend ISD failed to follow proper procedures because the human resources department did not act on Malbrough's and Oliver's April 2009 request that Harris not be given a reasonable assurance letter.  But the evidence shows that Malbrough and Oliver separately asked permission to terminate Harris in August 2009 and that both human resources and Fort Bend ISD's general counsel granted them permission to do so.  Harris has not identified or produced any summary judgment evidence that Fort Bend ISD failed to follow proper procedures in terminating her.

18

Finally, the time between Harris's sexual harassment complaint and her termination contradicts an inference of retaliation. Harris filed her harassment complaint with human resources on November 21, 2008. She was fired almost a year later, on August 20, 2009. The Fifth Circuit has held that similar lapses between a protected activity and the alleged retaliatory event do not show a causal link. *See Bell v. Bank of America*, 171 F. App'x. 442, 444 (5th Cir. 2006)(seven-month lapse did not demonstrate a causal link); *Dehart*, 214 F. App'x at 443 (seven-and-a-half-month lapse does not show a causal link); *Myers v. Crestone Intern., LLC*, 121 F. App'x. 25, 28 (5th Cir. 2005) (three-month lapse did not create casual link); *Harvey v. Stringer*, 113 F. App'x. 629, 631 (5th Cir. 2004) (ten-month lapse did not create casual link); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (five-month lapse did not create a casual link). In *Shirley v. Chrysler First, Inc.* the Fifth Circuit held that a casual link existed despite a fourteen-month lapse, but in *Shirley*, the employee had worked for nine years without a single oral or written reprimand until she filed an EEOC charge, at which point the employer "suddenly found three so-called flagrant indiscretions or violations, which it accused this plaintiff of committing." 970 F.3d 39, 44 (5th Cir. 1992). Here, unlike *Shirley*, Fort Bend ISD gave Harris repeated warnings before she was terminated.

Even assuming that Harris had made a *prima facie* showing, she has not rebutted Fort Bend ISD's nonretaliatory reason for her discharge — her excessive absences. Harris argues that Fort Bend ISD's reason for her discharge is pretextual because Fort Bend ISD gave conflicting testimony about the amount of work she missed. She notes that the warning letters she received document only 7 days of absence; that Oliver testified that as of April 30, 2009, Harris had missed "approximately 24 days, without counting her workers' compensation absences"; and that Oliver also stated that

19

between November 20, 2008 to June 29, 2009, Harris "was absent for a full or half day on approximately 51 separate occasions." (Docket Entry No. 29, Ex. N). The evidence shows that these numbers represent different types of absences and that the numbers are consistent. Harris both missed work and failed to timely inform her dispatcher of her expected absence 7 times; Harris missed 24 days as of April 30, 2009, *excluding* her workers' compensation time; and she missed 51 days between November 20, 2008 and June 29, 2009, *including* her workers' compensation time. Fort Bend ISD has also submitted an absence record consistent with these numbers. The record shows no basis to infer pretext.

Harris argues that her assertion that she missed only five days of work creates a fact issue as to whether she was fired for excessive absences. Harris's testimony, however, is conflicting. Harris did state that, "to [her] knowledge," she only missed five days. But at different points in her deposition, she admitted missing much more time. She admitted that the December 15 warning, which stated that she had failed to timely notify her dispatcher of four absences was correct, (Docket Entry No. 28, Ex. B, Harris Depo., 78–79); she admitted that the April 3 warning, which stated that she had failed to timely notify her dispatcher of three absences was correct, (*id.*, 80–82); and she admitted that the April 16 suspension notice, which referred to the December 15 and April 3 warning letters and noted an additional failure to timely notify her dispatcher of an absence, was correct, (*id.*, 138–39). At her deposition, Harris was presented with the memorandum Malbrough and Oliver prepared of the meeting at which Harris's employment was terminated. The memorandum showed 47 absences for the 2008–2009 school year, only 19 of which were related to her workers' compensation time. Harris admitted that she had no reason to dispute the accuracy. (*Id.*, 19).

20

Harris's testimony that she thought she missed only five days does not create a fact issue as to pretext.

Harris also argues that Fort Bend ISD's reason for her termination was pretextual because the employee handbook "defines" excessive absences as three warnings in a 90-day period. Harris argues that at most, two of the warnings — the April 2 warning letter and the April 16 suspension notice — occurred within a 90-day period. The record evidence shows that the employee manual does not define excessive absences; it only says that an employee who receives three warnings for failing to timely notify her dispatcher of an absence "may be fired." (Docket Entry No. 29, Ex. Q). This does not mean that an employer may only terminate an employee for excessive absences after three warnings.[2] The handbook also states that "[a]bsence in excess of the time allowed under Board policy for personal business and sick days is considered to be excessive absenteeism and indicative of inability to perform the job assigned." (*Id.*). The undisputed evidence shows that Harris was warned and suspended for missing at least 8 days and failing to timely report her absences. That Fort Bend ISD's employee handbook states that an employee may be terminated for three warnings in a 90-day period does not create a fact issue as to pretext.

Harris argues that a fact issue exists as to pretext because other employees with similar absences were not also terminated.[3] This does not provide a basis to deny summary judgment. There is no evidence that other employees with so many absences and warnings were not terminated.

_____

[2]   It is worth nothing that this section of the handbook states that a warning should be issued *each* time an employee fails to timely notify the dispatcher of an absence and that three warnings may cause employment termination. It appears that three failures to timely notify the dispatcher may cause termination. The undisputed evidence shows that Harris failed to timely notify her employer of eight absences in March 2009.

[3]   The record does not show that Fort Bend ISD produced employee files of similarly situated employees. Harris initially asked for this discovery in a motion to compel, which she later withdrew. (Docket Entries No. 30, 33).

And the evidence that Fort Bend ISD responded appropriately to Harris's sexual harassment claim, that she continued to work for almost one year after she complained, and that she was repeatedly warned before she was terminated precludes any inference of a causal relationship between the complaint and the decision to fire her.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 120, 148 (2000) (noting that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or . . . there was abundant and uncontroverted independent evidence that no discrimination had occurred").

Finally, Harris alleges that Fort Bend ISD retaliated against her by challenging her application for unemployment benefits with the Texas Workforce Commission.  The undisputed evidence shows that Fort Bend ISD challenged Harris's unemployment benefits *after* Harris was fired.  This retaliation claims fails for the same reasons Harris's retaliation claim based on the termination of her employment fails.  The lapse in time between her harassment complaint and Fort Bend ISD's challenge to her unemployment benefits negates any inference of a causal connection between the two.  Even assuming that Harris has stated a *prima facie* case, she has not demonstrated that Fort Bend ISD's reason for challenging her unemployment benefits was pretextual.  There is no evidence that the challenge was incorrect or unjustified.

None of the alleged instances of retaliation survives summary judgment.

**IV.      Conclusion**

Fort Bend ISD's motion for summary judgment, (Docket Entry No. 28), is granted.[4]  Final

judgment is entered by separate order.

SIGNED on March 22, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[4]   Fort Bend ISD's objections to Harris's summary judgment evidence, (Docket Entry No. 34), are denied as moot.  This court considered the evidence Fort Bend ISD objected to and found that Fort Bend ISD is still entitled to summary judgment.